# CITY OF SCRANTON v. WILLIAM GORE.

ERROR TO THE COURT OF COMMON PLEAS OF LACKAWANNA
COUNTY.

Argued February 25, 1889—Decided March 18, 1889.

1. Under § 6, act of April 16. 1840, P. L. 411, it is error, in an action against a city, to sustain the challenge of a juror on the specific ground assigned that he is a member of the select council of the municipality, and it is no answer to say that the party objecting to the challenge was not injured thereby.

2. In an action for damages for personal injuries received at night by reason of a serious defect in the sidewalk, that the plaintiff attempted to pass over the defect when the night was fair and there were two street lamps lighted near by, is evidence of contributory negligence, but the question under all the circumstances is one for the jury.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 115 January Term 1889, Sup. Ct.; court below, No. 414 April Term 1887, C. P.

On March 8, 1887, an action in case was brought by William Gore against the city of Scranton to recover damages for personal injuries received by the plaintiff while passing over a defective sidewalk. Issue.

The case came on for trial on April 9, 1888, when a jury being called, the counsel for the plaintiff challenged William M. Fowler, a juror, on the ground that he was a member of the select council of the city of Scranton.

The counsel for the defendant objected to the challenge.

By the court: The challenge is sustained, and the juror excluded; exception.[1]

The evidence adduced showed in substance that, an ordinance having been passed requiring the paving of the sidewalks of certain streets by abutting property owners, under the direction of the city engineer who was to supply the grades, in December, 1885, one John Williams, owning property on Main avenue, under the direction of the city engineer, the street

commissioner, and the councilman of the ward, forming what was known as the sidewalk board, excavated for a footway five feet wide for forty feet, the front of his lot. The grade supplied and followed in the excavation made the pavement when laid about twenty inches lower at one corner of the lot than the remaining pavement, leaving an abrupt descent of that depth at that point. At night persons would fall when passing along the street. Knowledge of the defect was communicated to the street commissioner and mayor of the city. Subsequently a log, perhaps ten inches in diameter was placed at the foot of the fall, one end of the log resting at the fence and the other extending across the pavement. On the night of May 6, 1886, between 10 and 11 o'clock, the plaintiff who lived in the city was passing along the street without knowing of the defect, as he testified, and stepping down between the log and the cut of the footway, fell forward and fractured the upper third of the tibia, elongating the ligaments that bind and control the knee-joint. The injuries resulting were permanent. There was contradictory testimony upon the question as to whether the place of the accident was sufficiently lighted or not.

At the close of the testimony the court, ARCHBALD, P. J., charged the jury, inter alia, as follows :

Cities, as well as other municipalities, are bound to keep their streets and sidewalks in proper repair. Such municipalities are organized, among other things, for that very purpose. Cities are chartered, boroughs and townships are organized and erected, for the purpose, among other things, of caring for just such places as has been described to you where this accident occurred. Cities are authorized to raise money from the inhabitants by taxes, and those taxes are given to the city authorities for the very purpose of maintaining the peace and health of the city, lighting the streets and keeping the roads and avenues and sidewalks in proper condition. In view of this duty, if any person is injured by reason of a neglect of it, then the city must respond in damages. These are the general principles. It is our duty then to apply them to this case.

The first question which naturally arises is, was the place where this accident occurred a dangerous place ? It has been

described by the witnesses so that it must be very plain to you just about what was its condition at the time. The street itself was one much traveled, according to the evidence, by day and by night; there were stores and dwellings along it; this excavation was right across the pavement or sidewalk; the pavement extended from Division street down to this place, and then there was an immediate drop of about twenty inches to two feet, and that extended across the whole breadth of the pavement or sidewalk, and was some five feet in the other direction. There was a store right there in sight. This log or pole was laid across the sidewalk from the fence to the edge of the hole towards the road. According to the evidence of one witness, this pole seems to have been in a measure fastened in its place; that is, on the fence side it was against a post of the fence and on the other lodged in a sort of hole. Dr. Allen speaks of it in that way. The space between the edge of the upper flag upon which the plaintiff was walking when he fell, and the pole itself, was some eight or ten inches, into which the foot and leg might very naturally and readily slip. It seems to me from all the evidence you can hardly fail to find that this was a place of danger, and if it was, we have the corresponding duty of the city authorities to remove it, as an obstruction of the common footway or sidewalk.

If you find then that it was a place of danger towards which the city owed such a duty, the next question is, was the city negligent? Of course if they owe a duty to exercise such care, then they were negligent in not repairing it. The plaintiff has presented this part of the case in a twofold manner to you.

In the first place, was this excavation made by the direction of the city authorities? This line of the plaintiff's case tends to directly charge the city authorities not only with notice of the place after it was put in this dangerous condition, but actually being the instrument or means of its having this dangerous character. An ordinance of the city, passed in 1877, and amended, I believe, in 1880, has been put in evidence. This ordinance was passed by the city councils, and established, among other things, a sidewalk board, composed in each ward of the select and common councilmen and the city engineer, I believe, and street commissioner. Any changes in the side-

walks and grades were to be made under the direction of this board, after plans and estimates had been submitted by the city engineer. We have the evidence that the sidewalk, where this obstruction was, was under consideration by this board; and a change directed to be made according to plans and specifications submitted by Mr. Blewitt, the city enginéer. In pursuance of this resolution of the sidewalk board, notice was given to the proper owner; he took his grade from the city engineer; in pursuance of the grade thus given him, the excavation was made, and the flags in front of this property of Mr. Williams's, which had been before even with the flags in front of Mr. Evans's store, were lowered the twenty inches in question. This must be held, under this evidence, to be the act of the city authorities. We have here the whole thing originating with the city councils. It is true their authority was delegated to this sidewalk board, and it may be that they have not the right to delegate the authority lodged in them in that way. It is not important, in my view of the case, to determine that question now. It might be important if there was an attempt to enforce upon the property owner the lowering of his grade; then it would come directly in question if the property owner resisted. He might raise the question whether the sidewalk board had authority under the law to order him, but we have not the question of that authority now in this case. This is a question of negligence to a third party, and in view of this evidence, we must hold that if the excavation was done, as the evidence clearly is, under the direction of the sidewalk board and the city engineer who gave the grade, it is the same as though these representatives of the city had gone there with their workmen and actually lowered the sidewalks themselves. It is to be noted, however, in this connection, that the city authorities did not direct the putting of the log across the street; they are merely held to the extent that their direction went. The log was put across there by the workmen whom Mr. Williams employed. It was supposed to be for purposes of safety. It seems to be, under the evidence, that it proved just the contrary, and so far as this log enters into the danger of the place the city is not chargeable with that in the same way which it would be for the excavation as having directly put it there.

We pass then to the other branch of the case which the plaintiff presents. As I have already said to you, the city of Scranton, as other cities, owes a duty to keep its streets in proper repair. If they get out of repair, if they become unsafe for use by obstructions or otherwise, the city authorities are bound to remedy that and remove such obstructions, and restore and repair the same within a reasonable time thereafter.

This duty to repair arises either from actual notice to the city authorities, or from constructive notice equivalent thereto. On the question of actual notice of this obstruction, we have the evidence that the street commissioner, with the mayor of the city came to the place within a week or two after Mr. Williams had made the excavation, and lowered his flag, and told Mr. Williams to put it back. While we have not in the evidence just the exact duties imposed upon the street commissioner, still the name implies something; and aside from this officer we have the mayor of the city, the chief executive officer of it, present at the place and observing it. This brings actual notice home to at least one of the city authorities, not only that the excavation was there, which, under the other evidence, the city is responsible for, but for the log being in place. And so far as that was an element of danger, notice was thus brought home to the mayor, and so to the city, of it as an obstruction. A city, in one sense, is an intangible thing: the citizens do not act together with regard to it, but are represented by officers, by city authorities; and so, when we come to the question of notice, we, all of us in the city, cannot know this thing, but if the officers, who are charged with the responsibilities and with the authority that the rest of the citizens have, have notice, that is notice to the city itself.

Even if there was not this evidence of actual notice, still the question of constructive notice might very properly arise, and it is perhaps my duty to touch upon that. The city authorities are bound to take notice within a reasonable time of want of repair in streets and of obstructions therein, affecting the safety of persons traveling along them. In this case we have this excavation made, and this is important, sometime in December, and the accident in the first part of May following. Here was in the neighborhood of five months. The place is described as one of the main streets of this city, as I

Charge of Court below

have already said to you, constantly traveled by night and by day. Considering then the place and the time, should the city authorities, in view of the duty cast upon them of caring for the streets and keeping them in repair, and within the time which had elapsed while this street remained that way, have repaired it? And in view of this duty if they should have repaired it, then they are affected with constructive notice, even though they did not have any actual notice of the place, because if the time was such that they, in the exercise of proper diligence, ought to have found out whether there was an obstruction there, the city becomes liable the same as though they knew.

If then, gentlemen, under these instructions and explanations which I have endeavored to give you, you find that the city was negligent with regard to this obstruction, the next question is as to whether there was any contributory negligence by the plaintiff, for the plaintiff cannot recover if he contributed by his own negligence in any degree to the accident. It is a matter of law, and a matter of common sense, that every one is bound to exercise proper care in his use of such things as the streets and avenues of a city, or the high roads of a township or borough, so as not to expose himself to danger. We are not to run into danger, but to avoid it. We have, however, the positive evidence of the plaintiff that he did not know of this place. While he lives, and lived at that time, in a part of the city along this highway, and beyond it going from the direction of the main part of Hyde Park, yet he accounts in a measure in his own way for not knowing of it; in the first place, by his absence from home in search of contracts, he being a contractor or sinker of shafts; and again, by the use of another way returning to and going from his home. If he did not know of this place, then he cannot be charged with the duty of endeavoring to avoid it, by either going out into the road and going around it, as we have the evidence that others did, or by taking some other safe way home. If a man knows of a dangerous place in a road and deliberately walks in it he cannot recover; he should avoid it by going around, or by going some other safe way. But we have the evidence of the plaintiff that he did not know; so, the duty to avoid it by going another way or by going around did not

arise. Could he then at the immediate time of the accident have avoided it? It was night time between ten and eleven o'clock, according to the evidence in the case, and the store of Mr. Evans was closed, which otherwise possibly might have thrown some light upon this place; the street was a public thoroughfare, partially lighted at least, by street lamps at some little distance on the other side of the street.

\*    \*    \*    \*    \*    \*    \*    \*

I will now read certain points which have been submitted to me by counsel on both sides, giving you my answers. . . . . I will first read the plaintiff's points with my answers to them.

1. The city of Scranton has charge over its streets and sidewalks, and must keep them in proper repair; it is bound to see that there are no obstructions therein other than those temporary obstructions necessary for the repair and maintenance of the said streets and sidewalks, and is responsible for accidents that may happen from the neglect of the duties thus imposed upon it by law.

Answer: This is in accordance with what I have already endeavored to instruct you, and I affirm it. Perhaps I ought to qualify it a little—not in principle, but in this way—that there may be obstructions other than those mentioned in this point for which the city would not be immediately liable, but only after such time had elapsed that notice should have been taken of them by the city authorities. Remember, I have already instructed you that where an obstruction occurs, the city is affected with constructive notice after a reasonable time, after such time that they ought to have noticed the obstruction and removed it. There might be temporary obstructions occurring with regard to which the city would not be immediately liable, but would be liable if left in that condition for an unreasonable time.

2. It matters not who made the excavation and placed the obstruction on the sidewalk, provided the jury find from the evidence that the city of Scranton had notice that the excavation or obstruction was there and failed to remove it; or, provided the city should, under the circumstances, by reasonable vigilance have discovered the obstruction and provided a safe guard.

Answer: This is affirmed.

Charge of Court below.

3. If the jury believe from the evidence that the fact of the existence of this excavation or obstruction was made known to the street commissioner or city engineer of the city of Scranton, prior to this accident, it was notice to the city thereof, and it was negligence on the part of the defendant not to have removed the same.

Answer: The duties of the street commissioner and city engineer are not defined clearly by the evidence. We only have what is implied by their duties from the names of these officers. From notice to these officers, I think the jury would be warranted in inferring notice to the proper city authorities who are charged with the correction of such an obstruction and defect in the street in question. With this qualification I affirm this point.

\*     \*     \*     \*     \*     \*     \*     \*

The defendant's points are as follows:

1. That the action of Mr. Williams in making a dangerous sidewalk excavation in front of his premises was without legal authority and was not the act of defendant.

Answer: This is refused.[2]

2. That the defendant would not in any case be liable unless notice was brought home to such city authorities as had power to remedy the alleged defect, or whose duty it was to communicate such notice to such authorities.

Answer: Subject to the qualifications which I have endeavored to give you in the general charge, and in the answer to the plaintiff's third point, I affirm this point.

9. If the jury believe that the night when the accident occurred was fair, and that two street lamps were lighted near by, so as to enable a passer-by to plainly see the obstruction, then the plaintiff, in attempting to pass over the alleged defect, was guilty of contributory negligence and cannot recover.

Answer: The question whether there was contributory negligence in the case is, under all the circumstances, for you, gentlemen, to determine, and not for me, and therefore I must refuse this point.[4]

10. Neither the city engineer nor the street commissioner nor the sidewalk board had any authority to fix a grade for the sidewalk, where the accident occurred, and there is no evidence in the case that the grade was ever fixed by competent authority.

Answer: In the view I take of the case this point is immaterial, and I must therefore decline to instruct you, as herein requested.[3]

11. The verdict should be for defendant.

Answer: This asks me to instruct you that under no circumstances could the plaintiff recover, and that under all the circumstances the defendant must have your verdict. I cannot so instruct you and refuse the point.

The jury returned a verdict in favor of the plaintiff for $4,500. The defendant then filed a motion for a new trial, assigning as a reason, inter alia, that the court erred in excluding from the jury William M. Fowler, on the ground that he was a councilman of the city. The rule granted having been argued, the court, ARCHBALD, P. J., on August 30, 1888, filed the following opinion:

It must be conceded that there was no sufficient ground for excluding the juror, Wm. Fowler, by reason of his being a member of the select council of the defendant city, and that the plaintiff's challenge for this cause should not have been sustained. The sixth section of the act of April 16, 1840, P. L. 411, distinctly provides: " That no person shall be excluded from being a witness or juror in any suit, prosecution or proceeding in which any county, city, incorporated district, borough or township is a party or is interested, by reason of such person being or having been an officer, rated citizen, or inhabitant in such county, city, district, borough or township, or owning assessed or taxable property, or being liable to the assessment or payment of any tax therein." This was not, however, called to my attention at the time, or I should not have fallen into the error complained of. The question now is whether the defendant is entitled to a new trial because of it. There is no charge but what a fair and impartial jury was obtained. The city solicitor relies simply upon the fact that a legal mistake has been made. But, unless the defendant has been prejudiced thereby, it is not my duty nor my privilege to disturb the verdict.

The refusal to sustain a challenge when sufficient cause is assigned, is to the prejudice of the party challenging, because an incompetent or partial juror is thus left on the panel. If

the party has exhausted his peremptory challenges the juror participates in the trial, and the error is thus carried into the verdict rendered.  Or, if the juror is removed by a subsequent peremptory challenge, still the party is to such extent impeded in the free exercise of the challenges without cause which the law has given him.  But it is materially different where a juror is excluded or excused from the panel.  While this may have occurred from a mistaken view of the law, so long as an impartial juror takes his place, the party has no ground of complaint; he has no legal right to have his case tried by any particular juror or set of jurors.  Until the jury has been sworn the court may direct the whole panel to stand aside and a new jury to be drawn; or, even after they have been sworn, may, in a civil case, withdraw a juror, and continue the cause until another term.  It may be proper to make one exception to this.  Where a challenge for cause has been sustained, after the opposite party has exhausted his peremptory challenges, an objectionable juror might be drawn, upon whom the party would not have had opportunity to exercise his peremptory right.  But this cannot occur in our practice, because challenges for cause must be first assigned and disposed of.

, This view of the law is sustained by the highest authority. It is said in Thompson and Merriam on Juries, 271: " Where a cause has been tried by an impartial jury, although the judge on the application of one of the parties and against the consent of the other, may have rejected a juror for a cause of questionable sufficiency, such rejection does not afford a ground of complaint, if justice has been done in the premises.  In other words, while the disallowance of a good cause of challenge will make a reversal of the judgment, an improper allowance of a cause of challenge will not necessarily have this effect; a qualified juror may be rejected, and still a jury of lawful men against whom there is no objection may be obtained.  A party is entitled to a lawful jury; but he is not under all circumstances, as a matter of right, entitled to have the first juror called who has all the statutory qualifications." Sections 159, 251, 259, of the same able work may be profitably consulted for the further elucidation of this doctrine.

Turning to the decided cases, they abundantly sustain these views.  Thus it was somewhat emphatically said by the Court

of Appeals of Texas, in Grissom v. State, 8 Tex. App. 386 :
" If a defendant has been tried by an impartial jury, the court
may have committed a hundred errors in the mere process of
impaneling it without subjecting its action to revision upon
appeal." In Heaston v. Railroad Co., 16 Ind. 279 (79 Am.
Dec. 430), it is said : " It is alleged that a challenge to a juror
was wrongly sustained ; but judgment will not be reversed,
because the court sustained a challenge to a juror for cause
which did not render him legally incompetent, where the act
was done in an effort to get a perfectly impartial jury, and
such result was achieved." In United States v. Cornell, 2
Mas. 91, it is said by Mr. Justice STORY : " Even if a juror
had been set aside by the court for an insufficient cause, I do
not know that it is matter of error, if the trial has been by a
jury duly sworn and impaneled, and above all exceptions.
Neither the prisoner nor the government in such a case has
suffered injury." We are indebted to the same learned justice
in United States v. Marchant, 12 Wheat. 480, for the first clear
statement of the kindred principle, that the right of challenge
is not the right to select, but the right to reject jurors. He
there says : " The right, therefore, of challenge does not neces-
sarily draw after it the right of selection, but merely of exclu-
sion. It enables the prisoner to say who shall be the particular
jurors to try him. The law presumes that every juror sworn
in the case is indifferent and above legal exception, for other-
wise he may be challenged for cause. What jurors in par-
ticular shall try the cause, depends upon the order in which
they are called, and the result is a mere incident following the
challenges, and not the absolute selection of the prisoner re-
sulting from his power of challenge." In Tatum v. Young,
1 Port. 298, a competent juror was excluded against the objec-
tion of the defendant, and this was assigned for error, but the
court say : " It is a general rule that neither party can claim
any advantage from any decision or other matter having no
tendency to prejudice him. Where a cause has been tried by
an unexceptionable jury, the law presumes no injury to either
party for want of any other person in lieu of those composing
that jury. Should it happen, as supposed in argument, that a
judge, for political or other unworthy motives, might at some
time reject jurors to effect some sinister or criminal design,

and the circumstances disclosed an injury to either party, the question on error might be essentially different." In People v. Arceo, 32 Cal. 40, it is said: " We are not aware that it has ever been settled that a defendant, under all circumstances, is entitled to have a judgment reversed, where the court of its own motion, against his objection, rejects a juror possessed of all the statutory qualifications. If a juror not possessing the requisite qualifications is allowed to sit against the objections of a defendant, the judgment will be reversed, because he has not been tried by a lawful jury. But a qualified juror may be rejected and still a jury of lawful men, against whom there is no objection, may be obtained. A party is entitled to a lawful jury, but no decision has been brought to our notice to the effect that under all circumstances he is, as a matter of absolute right, entitled to have the first juror called who has all the statutory qualifications." In People v. Murphy, 45 Cal. 137, a person competent to sit as a juror was challenged for insufficient cause, and the challenge erroneously sustained. By the statute of that state exception may be taken to the disallowing a challenge, nothing being said as to the allowing of one. The court, in commenting upon this, say: " The reason, and it is a sensible one, upon which the statute proceeds, is that when a competent jury, composed of the requisite number of persons, has been impaneled and sworn in the case, the purpose of the law in that respect has been accomplished; that, though in the impaneling of the jury one competent person be rejected, yet if another competent person has been substituted in his stead, no injury has been done to the prisoner, certainly no injury which a new trial would repair; because, even should a venire de novo be awarded, it is not pretended that the prisoner could insist upon the excluded person being specially returned upon the panel. The result would be that the prisoner would probably be tried again by another competent jury, of which the excluded person would not be a member, and so the new trial would only be to do over again that which had been done already."

There is no express decision upon this question in our own state; but, in Silvis v. Ely, 3 W. & S. 425, where a challenge for cause had been sustained, it was said by Mr. Justice Rogers: " And it is difficult to perceive in what it (the injury) consists,

when the cause has been tried by persons free even from the suspicion of bias or partiality." Here is a dictum at least, which recognizes the principle contended for, and is certainly entitled to some weight in the absence of any decision to the contrary. The cases in our reports where the improper allowance of a peremptory challenge has been made the ground of reversal, are not to be confounded with such a case as the present. A peremptory challenge is the act of the party and not of the court; and its allowance out of course, or when the party was not entitled to it, might give an unfair advantage and be a proper source of complaint.

Feeling myself constrained by these principles and authorities, I must hold that the defendant has suffered no legal prejudice, and is not entitled to a new trial.

The rule is therefore discharged.

Judgment having been entered upon the verdict, the defendant took this writ, assigning as error :

1. The order sustaining the plaintiff's challenge.[1]
2. The answer to the defendant's point.[2]
3. The answer to the defendant's point.[3]
4. The answer to the defendant's point.[4]

*Mr. I. H. Burns, City Solicitor,* and *Mr. W. Gaylord Thomas,* for the plaintiff in error :

1. Parties to a suit are entitled not only to have an impartial jury, but to have it selected according to law. There can be no mistake as to the language or meaning of § 6, act of April 16, 1840, P. L. 411, nor was there any question of fact under it, in this case, that left anything to the discretion of the court. It seems to us it was not the province of the court to judge of the wisdom or necessity of the law, but simply to execute it. The case of Cummings v. Gann, 52 Pa. 484, is squarely in point.

2. The court below should have affirmed the defendant's ninth point without qualification. If the jury ascertained the facts as set forth, then they should have had such an answer from the court as would have enabled them to arrive at a correct conclusion. As it was, the answer of the court gave them no light on the subject, and, though they might have

found the facts precisely as stated in the point, they would still have been ignorant as to the legal result: King v. Thompson, 87 Pa. 365.

*Mr. C. Comegys* and *Mr. Thos. F. Wells* (with them *Mr. H. M. Edwards*), for the defendant in error:

1. The act of 1840, relied upon, is opposed to natural right and equity. It would make a municipal body, so far as such an end is attainable by legislation, a judge in her own case. It infringes and impairs the right of the subject to that fair and impartial judgment of his peers which the constitution gives to him. The courts have determined that a statute making the taxable inhabitants of a municipality competent jurors to sit in suits at law of this character, is not unconstitutional. The ground of the ruling was, it seems, the insignificant pecuniary interest of such persons in the event of the suit: Commonwealth v. Reed, 1 Gray 475; Commonwealth v. Ryan, 5 Mass. 90. But in the case of an officer of the municipality, we have not only this pecuniary interest, but in addition, an interest in the disposition of the case of a far more dangerous character.

2. Granting, for the sake of the argument, the constitutionality of the act, by the exclusion of the juror the defendant was denied no substantial right to which he was entitled. So long as an impartial juror may take the place of one excluded, neither party has any ground of complaint, as neither party has any legal right to have his cause tried by any particular juror or set of jurors: Thompson and Mer. on Juries, §§ 159, 251, 259, 271; Grissom v. State, 8 Texas App. 386; Heaston v. Railroad Co., 16 Ind. 279 (79 Am. Dec. 430); United States v. Cornell, 2 Mas. 91; People v. Murphy, 45 Cal. 137; United States v. Marchant, 12 Wheat. 480; Tatum v. Young. 1 Port. 298; People v. Arceo, 32 Cal. 40; Silvis v. Ely, 3 W. & S. 420; Abilene v. Hendrick, 36 Kan. 196.

3. The court below in the general charge instructed the jury plainly and clearly that if the plaintiff contributed by his own negligence in any degree to the accident, he could not recover. The question of contributory negligence in the case was for the jury: Germantown etc. Ry. Co. v. Walling, 97 Pa. 55; Penn. R. Co. v. Werner, 89 Pa. 59.

Opinion, Mr. Justice Sterrett:

It appears that William M. Fowler, drawn as a juror in this case, was challenged for cause, by plaintiff below, on the specific " ground that he is a member of the select council of the city of Scranton," the corporation defendant, and for that reason alone the challenge was sustained. That action of the court was contrary to the express provisions of the act of April 16, 1840, P. L. 411, which declares : " No person shall be excluded from being a juror in any suit, prosecution or proceeding, in which any county, city, incorporated district, borough or township is a party or is interested, by reason of such person being or having been an officer, rated citizen or inhabitant in such county, city, district, borough or township, or owning assessed or taxable property, or being liable to the assessment or payment of any tax thereon."

The exclusion of the juror, for the only reason assigned, was clear error. It is no answer to say that defendant below was not prejudiced thereby. For aught we know the action of the court may have resulted in the selection of a jury composed of one or more persons who would not otherwise have been impaneled and sworn to try the cause ; and, what the effect of that may have been, we have no means of knowing. But, aside from that, the action of the court was illegal, and that of itself demands a reversal of the judgment. The question is not whether the jury that rendered the verdict was composed of impartial men or not, but whether the jury was selected in accordance with the law.

There is no merit in the second and third specifications. The points for charge recited therein were rightly refused.

There was no error in refusing to charge as requested in defendant's ninth point, and thus withdraw the case from the jury. The allegations of fact, embodied in the point, if true, were evidence of contributory negligence, but the question was one of fact for the jury on all the evidence before them.

Judgment reversed, and a venire facias de novo awarded.